Argued February 3, decided February 17, 1914.

## WARD *v.* QUEEN CITY INS. CO.*

(138 Pac. 1067.)

**Insurance—Forfeiture—Fraud or False Swearing.**

1. Policies of insurance become void in case of fraud or false swearing by the insured as to any matter relating to the insurance or the subject thereof, whether before or after loss, but only when it is done willfully and knowingly, with the effect of defrauding the insurer.

> [As to when concealment or false representations avoid an insurance policy, see note in 35 Am. Rep. 629.]

**Insurance—Forfeiture—Waiver.**

2. Where an insurer denies liability upon a specific ground, other grounds of forfeiture at the time within the insurer's knowledge, including false swearing by the insured, are waived, if the insured has taken action pursuant to the attitude taken by the insurer.

———————

*As to the effect of false swearing in proofs of loss, see note in 32 L. R. A. (N. S.) 453.                          REPORTER.

Insurance—Actions—"Presumption"—Nature and Effect.

3. Under Section 795, L. O. L., defining a presumption as a deduction which the law expressly directs to be made from particular facts, and Section 93, naming presumptions as a species of evidence, the presumption in an action on an insurance policy that the insured is innocent of false swearing is evidence to be submitted to the jury.

Appeal and Error—Review—Discretion of Trial Court—Admission of Evidence.

4. In an action on an insurance policy, the discretion of the trial court in admitting opinion evidence, as to the value of merchandise insured, of a witness who had kept books for insured and assisted the adjusters in their work, and a witness who had considerable experience in buying goods of the kind carried by plaintiff, and who was a frequent visitor at the insured's place of business, and acquainted with the quantity and character of his stock of goods, will not be disturbed on appeal.

From Multnomah: HENRY E. McGINN, Judge.

This is an action by E. M. Ward against the Queen City Fire Insurance Company of Sioux Falls, South Dakota. The facts are fully set forth in the opinion of the court.                    AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur, Spencer & Dibble* and *Mr. U. S. G. Cherry,* with an oral argument by *Mr. Schuyler C. Spencer.*

For respondent there was a brief over the name of *Messrs. Malarkey, Seabrook & Stott,* with an oral argument by *Mr. Dan J. Malarkey.*

Department 2.    MR. JUSTICE McNARY delivered the opinion of the court.

Plaintiff recovered a verdict for $3,578 in the Circuit Court for Multnomah County upon a policy of insurance on a stock of merchandise and office furniture located in a building known as "The Woolen Mills," in North Bend, Coos County. The complaint embraces allegations usual in an action of that character.

The defenses relied upon are: (1) That the fire was incendiary in its origin; (2) false swearing with respect to making of the proof of loss; (3) that defendant's liability, if at all, is modified by reason of concurrent insurance.

The reply contains two separate defenses: (1) That defendant should be estopped from asserting that plaintiff made a false statement with respect to the proof of loss, for the reason that the same was made in the manner prescribed by and under the directions of an accredited agent of defendant, after a full disclosure by plaintiff of all the circumstances surrounding the destruction of the property; (2) that defendant should be estopped from prosecuting the second defense, because defendant, with full knowledge of every fact surrounding the loss of property by fire, notified the plaintiff of its denial of liability upon the ground of a transgression by plaintiff of a provision in the policy which inhibited the storage of gasoline, and that plaintiff, relying upon such statement, employed attorneys and instituted this action.

The destruction of the property by fire occurred late in the night, and in the absence of one Mr. Carnick and son, who usually slept in the building. In the proof of loss, plaintiff stated the value of the stock of merchandise destroyed by the fire was $15,475.89. The contract of insurance contains a provision that any false swearing in the proof of loss will render the policy void. The fire occurred on July 20, 1908. On August 8, 1908, the proof of loss was made, and on October 27th following, Grant B. Dimick, who was the acknowledged attorney for defendant, forwarded to plaintiff a letter stating that defendant declined to pay the loss, because of an increased hazard produced by the act of plaintiff in storing a quantity of gasoline

in the building, contrary to one of the conditions of the policy.

Enforced by much authority, counsel for defendant insist that the court committed error in giving this admonition to the jury:

"Gentlemen of the Jury: It is admitted in this case that on the 27th day of October, 1908, G. B. Dimick, as the attorney for the Queen City Insurance Company, wrote a letter to the plaintiff, E. M. Ward, at North Bend, in Coos County, in this state, in the name of his company, in which he declined to pay this policy of insurance No. 64,676, which was issued by this defendant company, on the 24th day of August, 1907, and which was to run for a year upon the ground that the risk of the company had been increased by the renting of a portion of this property to the Bevier Manufacturing Company, and the declination of the company to pay that amount of loss, under that policy, was placed on the ground, and upon that ground alone, that the increase in that risk avoided the policy, under the terms and conditions of it. If, in this case you find that at the time Mr. Dimick wrote this letter, on the 27th of October, 1908, this company knew all the facts and circumstances which it knew when it filed its second substituted answer in this case, then, gentlemen of the jury, your verdict should be for the plaintiff, subject to such other instructions as I shall give you, because, when they know all of the facts, and they undertake to assign the reason why they do not fulfill their contract, knowing all the facts, they must state all the facts, and, if they failed to state all the facts, they can only be heard in that event in regard to the f ts which they have alleged. This, of course, is provided the plaintiff in this case, relying on that letter, has hired an attorney and has paid the costs to bring an action in a court of justice, relying upon the statements that are made. Persons in good faith must usually give all the reasons for refusing to pay, or ever thereafter hold their peace as to those things they do not know. Therefore, as to the defense of increased hazard, if you find these facts were all

known at the time this letter of October 27th was written, your verdict must be for the plaintiff in this case. If, however, you find that, after Mr. Dimick wrote this letter, the facts that are alleged in the second substituted answer, those facts came to the defendant company, and they were not in the possession of these facts at the time that Mr. Dimick wrote that letter, then they are entitled to make this defense in this case. As I told you before, if they knew these matters when they wrote that letter of the 27th of October, 1908, by Mr. Grant Dimick, but did not base their refusal on that ground, you will not consider it. But if you find they came in possession of that knowledge after they wrote that letter, and did not have that knowledge at that time, you are to consider this defense. And these defenses, gentlemen, I have submitted to you as I have upon the theory that the defendant company acquired this knowledge concerning these facts after the time that this letter was written by Mr. Grant Dimick to the plaintiff. Of course, if they were in possession of that knowledge at the time this letter was written by Mr. Dimick to the plaintiff, these defenses will not be considered by you. They are only to be considered by you if you find that the company came in possession of these facts after Mr. Grant Dimick wrote this letter to the plaintiff on the 27th day of October, 1908.''

We quote this instruction in its fullness.

1. We quite agree with counsel that policies of insurance become void in case of fraud or false swearing by the insured touching any matter relating to the insurance, or the subject thereof, whether before or after loss. Though it must be added that mere falsity is not sufficient to annul a policy, the false swearing which vitiates the contract of insurance must be done willfully and knowingly; the effect being to defraud the company. This doctrine was effectively stated by Mr. Justice Eakin in the late case of *Willis* v. *Horticultural Fire Relief, ante,* p. 293 (137 Pac. 161), in this language:

"The terms 'fraud' and 'false swearing,' being used together, must have the same application, and the false swearing must have been knowingly and willfully false; its effect being to deceive or mislead."

2. Whether in this case there was false swearing upon the part of plaintiff was conclusively sealed by the verdict of the jury, though, commingled with that consideration, was the other, that the jurors were told to disregard any matters pertaining to false swearing in the proof of loss, if they believed defendant was in full possession of all the facts and circumstances relating to the fire at the time plaintiff received the Dimick letter.

On this point, Mr. Chief Justice MOORE, in *Wyatt v. Henderson,* 31 Or. 48 (48 Pac. 790), credits Mr. Justice SWAYNE, in *Railway Co.* v. *McCarthy,* 96 U. S. 258 (24 L. Ed. 693), as saying:

"Where a party gives a reason for his conduct and decision touching anything in action in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law."

We see no reason to depart from this rule which is securely rooted in common justice and plainly applicable to the case at bar. After the lapse of some months subsequent to the fire, defendant expressed its declination to meet the terms of the contract of insurance upon the sole ground that certain acts of the plaintiff had increased the hazard of its risk. Accepting this position of defendant's as the battle-ground, plaintiff employed counsel and initiated this action. By this conduct, defendant led plaintiff to believe that there was but one reason for its denial of liability; consequently, under such circumstances, defendant should not be permitted to screen itself from

liability on grounds other than the one specified in the letter indited by its legal representative, provided defendant had informed itself prior to the letter of the cause of the fire, and was in possession of the material which it now claims exculpates it from liability. "Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire fairness and frankness. They may refuse to pay without specifying any ground, and insist upon any available ground, but, when they plant themselves upon a separate defense and so notify the insured, they should not be permitted to retract if the latter has acted upon their position as announced, and incurred expenses in consequence of it," said Mr. Chief Justice CHURCH, speaking for the Court of Appeals in *Brink* v. *Insurance Co.*, 80 N. Y. 108, and quoted with approval in *McCormick* v. *Insurance Co.*, 163 Pa. 193 (29 Atl. 747).

The adjudications relied upon by defendant's counsel advance the doctrine that a waiver, to be efficacious, must embrace all of the elements present in an equitable estoppel. Admittedly there are some strong cases urging that principle, for example, *Armstrong* v. *Agricultural Ins. Co.*, 130 N. Y. 560 (29 N. E. 991), and *Gibson Electric Co.* v. *Liverpool & London & Globe Ins. Co.*, 159 N. Y. 418 (54 N. E. 23). However, we feel that both the force of logic and the weight of authority sustain the doctrine just announced: 19 Cyc. 793.

In this case, it is alleged, and much competent proof was given at the trial in support thereof, that, seasonably following the destruction of the property by fire, two insurance adjusters, one of whom represented defendant, visited the scene of the fire, and made inquiries concerning the origin of the fire, the quantity and value of the property destroyed and the owner-

ship thereof, the increase of the hazard, if any, and discussed generally with plaintiff all matters appertaining to an injury of that nature. Consequently, when defendant decided to deny liability to plaintiff, good faith required that it should apprise plaintiff fully of its position, and, failing to do this, we think defendant is estopped from asserting any defense, other than that brought to the notice of plaintiff. This principle of law was covered by the court in its instructions, and left the question of estoppel to be decided by the jury. No error was committed: *Smith* v. *Insurance Co.,* 107 Mich. 270 (65 N. W. 236, 30 L. R. A. 368); *Towle* v. *Insurance Co.,* 91 Mich. 219 (51 N. W. 987); *Bonnert* v. *Insurance Co.,* 129 Pa. 558 (18 Atl. 552, 15 Am. St. Rep. 739); 19 Cyc. 793.

3. The learned trial court stated, among other things, to the jury that:

"You will observe, however, gentlemen, that this involves the charge of a crime, and there is a natural presumption of innocence, so far as this man is concerned, this plaintiff, and that natural presumption of innocence you are to weigh in considering this matter, in considering your verdict, and you are also instructed that this is a natural presumption of innocence in this case, because it is not a criminal case. And this natural presumption of innocence is founded upon the fact in favor of this plaintiff that men do not ordinarily commit crimes of this kind. You are, however, to weigh all of the testimony in this case, giving this presumption such weight as you think it is entitled to, but, after all, determine the case upon a preponderance of the evidence, as I shall hereafter indicate to you."

An exception to this instruction was taken by counsel for defendant, and is here urged as error upon the twofold hypothesis: (1) That there is no natural presumption that one who has insured his property will not burn the same in order to obtain the insurance;

(2) that a presumption of law or fact, natural or otherwise, is not evidence for the jury. Counsel with scholarly force argue that the function of a presumption is to take the place of evidence, and relates only to a rule of law. Or; by indulging a pleasing figure of speech, as did Justice LAMM in *Mockowik* v. *Kansas City,* 196 Mo. 550 (94 S. W. 256) : "Presumptions may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." If this question was one of first impression in this state, we would feel obliged to give unto it serious consideration, but, in deference to the statute which says a presumption is a deduction which the law expressly directs to be made from particular facts (Section 795, L. O. L.), and to the opinion of this court in *National Bank* v. *Insurance Co.,* 33 Or. 43, (52 Pac. 1050), and which was followed in *Sears* v. *Daly,* 43 Or. 351 (73 Pac. 5), we feel the instructions given by the learned circuit judge were correct and in accord with the statute and the law heretofore announced by this court. Without entering upon a formal disquisition of the law involved, the statement may well be made that counsel for defendant has produced an abundance of high authority to support the position for which they contend. But, whatever may be the rule in some states, or the principle sanctioned by the text-writers, our code regards a presumption as a species of evidence by placing presumptions in the class of indirect evidence: Section 93, L. O. L. No sufficient reason is presented to warrant this court in overruling its former pronouncement on the subject under consideration, and for that reason adherence is given to the rule embodying the instructions of the lower court.

4. Again, a reversal of the judgment is sought upon the ground that the court committed prejudicial error

in allowing one Carl E. Folland, a witness for plaintiff, to give his opinion concerning the value of the stock of merchandise in the store at the time of the conflagration. The witness testified that he was living in North Bend, and in the employ of plaintiff at the time of the fire; that for some weeks prior to the destruction of the property he was keeping the books, selling goods, and helping with the stock of merchandise owned by plaintiff; that he assisted the adjusters in their work of ascertaining the value of the stock from the books and records kept by plaintiff in connection with the business in which he was engaged. The witness then was permitted to testify, over objection, that, in his opinion, the value of the stock was at the time of the fire between $12,000 and $15,000.

Complaint is also made that one F. J. Clark was allowed to testify, over objection, that, in his opinion, the value of the stock at and immediately before the fire was not less than $10,000, nor more than $11,000. Before giving the opinion, the witness stated he had had considerable experience in the buying of goods of the kind carried by plaintiff; that he was a frequent visitor at plaintiff's place of business and acquainted with the quantity and character of the stock of goods owned by him during the four months preceding the fire.

The contention is made that these witnesses did not possess the necessary qualifications to testify as to the value of the stock of goods destroyed. It would be difficult to define the exact measure of fitness a witness must have before being privileged to express an opinion involving value, though the witness must have some knowledge of the matters about which he expresses an opinion.

In *Multnomah County* v. *Willamette Co.,* 49 Or. 221 (89 Pac. 396), this court, citing a number of its former opinions in support thereof, said:

"The witness' qualifications to express an opinion on the subject was a question of fact for the trial judge, and his finding will not be disturbed except in case of an abuse of discretion."

From these conclusions, it follows that the judgment must be affirmed.                                      AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.