Argued and submitted July 18, affirmed November 5,
reconsideration denied November 29,
petition for review denied December 11, 1979
petition for reconsideration of denial of petition
for review allowed February 12, 1980

PEREZ,
*Appellant,*

*v.*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
*Respondent.*

(No. 78 11 349, CA 13300)

602 P2d 284

Glenn D. Ramirez, Klamath Falls, argued the cause for appellant. With him on the briefs was Grant V. Mumpower, Portland.

[19]

Jay D. Enloe, Portland, argued the cause for respondent. With him on the brief was Vergeer, Roehr & Sweek, Portland.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

THORNTON, J.

**THORNTON, J.**

Plaintiff appeals from an order granting summary judgment in favor of defendant insurance company.

The undisputed facts show that plaintiff's decedent was a pedestrian killed instantaneously when struck by a car driven by defendant's insured. Defendant paid funeral expenses but refused to satisfy plaintiff's demand for lost wages allegedly due by reason of a clause in the policy, required by ORS 743.800(3) and (4),[1] providing for payment of 70 percent of an injured person's lost wages during the period of disability stemming from the injury. Plaintiff's demand was for wages lost over the 52 week life of the policy.

The statute which requires Personal Injury Protection (PIP) coverage does not define the term "disability" and the question is one of first impression. In *Hamrick v. State Farm Mut. Auto. Ins. Co.*, 270 SC 176, 241 SE2d 548 (1978), the South Carolina Supreme Court considered the meaning of "disability" in the context of their PIP statute which covered medical, ambulance, hospital and funeral expenses and disability benefits including "in the case of an income producer, payment of benefits for loss of income as the result of the accident." S. C. Code § 56-11-110.

---

[1]

"Every motor vehicle liability policy issued for delivery in this state that covers any private passenger motor vehicle other than a motorcycle shall provide to the person insured thereunder and members of his family residing in the same household injured in a motor vehicle accident, passengers injured while occupying the insured motor vehicle and pedestrians struck by the insured motor vehicle, the following hospital, medical, disability and funeral benefits for each accident:

"* * * * *

"(3) If the injured person is usually engaged in a remunerative occupation, 70 percent of the loss of income from work during the period of disability continues for at least 14 days and ending on the date the injured person is able to return to his usual occupation; or

"(4) If the injured person is not usually engaged in a remunerative occupation, the expenses reasonably incurred for essential services in lieu of those the injured person would have performed without income during the period of disability if the disability continues for at least 14 days and ending on the date the injured person is reasonably able to perform such essential services." ORS 743.800(3), (4).

The court stated:

"The key concept embodied in PIP no fault coverage is that an injured person needs to promptly pay expenses necessarily arising out of injuries sustained, and needs support for himself and his family during the period of recuperation. The Act appreciates the fact that contested negligence tort actions are often prolonged and do not provide for the needs of injured persons at the time when need is greatest. It is not the function of PIP no fault insurance coverage to provide funds for the creation or enhancement of one's estate. * * * The fact that one is not entitled to PIP no fault benefits does not, of course, limit his right of action in tort. Income which might have been earned after death is properly collectible in a tort action." 270 SC at 180, 241 SE2d at 549-50.

In a similar case, *Griffin v. Travelers Indemnity Company*, 328 So 2d 207 (Fla App 1976), the court reasoned that including death within the definition of disability was tantamount to providing an automatic death benefit equal to maximum disability benefits, a result which there was no indication the legislature intended. We note in this regard that our legislature in the workers' compensation context clearly distinguished permanent total or other disability benefits and death benefits, and that "disability" refers to loss of function while the injured person is living. *Cf.* ORS 656.204 and 656.206(1)(a). We note also that the language of ORS 743.800(3) and (4) contemplates that the injured person will ultimately return to work. We conclude that the above-quoted language from *Hamrick* accurately states the intent of our legislature with respect to the meaning of "disability."

It follows that summary judgment for defendant was properly granted unless it was estopped to assert that lost wages after death were outside the policy coverage. We hold it was not estopped. The recent case of *Wyoming Sawmills v. Transportation Ins. Co.*, 282 Or 401, 578 P2d 1253 (1978), is directly in point. There, the court distinguished *Ward v. Queen*

[22]

*City Ins. Co.*, 69 Or 347, 138 P 1067 (1914), in which the court held that an insurer which denies coverage on the basis of one exclusion cannot wait until trial and assert that another exclusion precludes coverage:

> "No distinction is made in *Ward* between failure to assert that the claim falls within the *insuring clause* originally granting coverage as compared with a failure to assert an *exclusion* from the original grant of coverage. It seems obvious that the rule must be limited to failure to assert an exclusion. Waiver or estoppel cannot be the basis for creating an original grant of coverage where no such contract previously existed. *Schaffer v. Mill Owners Ins. Co.*, 242 Or 150, 156, 407 P2d 614 (1965). * * *" (Emphasis in original.) 282 Or at 410.

Since lost wages after death are not within the original policy coverage, defendant was not estopped to assert that proposition as the basis for summary judgment.

The remaining issues do not warrant discussion.

Affirmed.